UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| RYAN WHITE & JESSICA WHITE,<br><br>Plaintiffs,<br><br>vs.<br><br>RETSEL CORPORATION,<br><br>Defendant. | 5:23-CV-05072-KES<br><br>ORDER GRANTING IN PART AND DENYING IN PART DOCKET NO. 28<br><br>and<br><br>DENYING DOCKET NO. 32 |

## INTRODUCTION

This matter is pending before the court on plaintiffs' complaint alleging intentional race discrimination against defendant under 42 U.S.C. § 1981 after their hotel reservations at defendant's hotel were allegedly not honored and defendant refused to rent hotel rooms to them.  See Docket No. 1.  Plaintiffs have filed two motions to compel (Docket Nos. 28 & 32), both of which were referred to this magistrate judge for resolution.  See 28 U.S.C. § 636(b)(1)(A) and Docket Nos. 44 & 47.

**FACTS**

**A.     Plaintiffs' Claims**

The following recitation of facts is taken from plaintiffs' complaint and defendant's answer in order to give context to the discovery motions. The court does not imply that the facts are true.

On August 13, 2023, plaintiffs Ryan White and Jessica White attempted to check into the Grand Gateway Hotel, in Rapid City, South Dakota. Defendant Retsel Corporation owns the hotel. The Whites had previously made reservations through Travelocity for three rooms for this hotel. Ryan White is Native American while Jessica White is not.

Jessica entered the hotel lobby and began the process of checking in with Nick Uhre, who was behind the desk. When Ryan entered the lobby, Mr. Uhre stopped the check-in process and told the Whites they had no reservations. Mr. Uhre continued to refuse service to the Whites even after Travelocity confirmed the Whites' reservations. Eventually, Mr. Uhre threatened to call security. At this point the Whites left.

Defendant represents that the Whites had reserved three rooms with two queen beds in each room, but that when the Whites showed up at the hotel to check in, the rooms available included one room with two queen beds and two rooms with one king bed. See Docket No. 5 at 4. These rooms were not acceptable to the Whites according to defendant. Id. Alternatively, Nick Uhre stated in his deposition that the reason the Whites were not given rooms at the Grand Gateway Hotel on August 13, 2023, was because their "reservation did

not come through the system." See Docket No. 36-2 at 5. Defendant asserts its employee threatened to call security after Mr. White confronted the employee in an aggressive manner and used profanity. Docket No. 39 at 4. Mrs. White acknowledges that her husband spoke to defendant's employee using profanity. See Docket No. 36-3 at 4 (Jessica White depo. at 21:24).

Plaintiffs allege in their complaint that defendant has a pattern and practice of discrimination against Native Americans as evidenced by a 2022 social media post by Connie Uhre stating that Native Americans would no longer be allowed on the premises of the Grand Gateway Hotel. Plaintiffs also point to an email from Connie Uhre expressing that she did not want to allow Native Americans on defendant's property. Plaintiffs' complaint does not establish what relationship, if any, Connie Uhre has to defendant Retsel Corporation or the Grand Gateway Hotel. Plaintiffs identify Nick Uhre as the manager and owner of Grand Gateway Hotel. See Docket No. 1 at 5.

Defendant denies that Nick Uhre was at the hotel on the night of August 13, 2023. Defendant asserts Damien Quintana, an employee of defendant, was the person with whom the Whites interacted at the hotel front desk on August 13, 2023. See Docket No. 5 at 3.

**B.     Facts Pertaining to the Discovery Disputes**

    **1.     Motion to Compel at Docket No. 28—Eight Items**

On July 10, 2024, plaintiffs served defendant Retsel Corporation with seven requests for the production of documents (RFP), three of which are the subjects of this motion: RFP nos. 12, 13, & 15. Defendant filed responses to

3

these discovery requests on August 30, 2024, indicating it was searching for documents responsive to RFP 12 and 15 and would supplement its responses later.  See Docket No. 31-3 at 4-5.  Defendant objected to RFP 13 as overly burdensome and harassing.  Id. at 4.

Defendant then filed bankruptcy, resulting in a hiatus of proceedings in this matter.  Defendant also changed counsel, discharging its North Dakota counsel that previously represented defendant and hiring new counsel from California.  See Docket No. 16 & 17.  Discovery resumed on March 27, 2025.  See Docket No. 15.

On April 8, 2025, plaintiffs served defendant with six RFP, four of which are the subjects of this motion:  RFP 18, 19, 21 and 23.  Finally, defendant produced a three-page email in response to RFP nos. 4 & 9 of which the last two pages of the email are redacted.  See Docket No. 31-13 at 2-4.  The redactions in that document are the subject of the eighth item raised in plaintiffs' motion to compel at Docket No. 28.

### 2.     Motion to Compel at Docket No. 32—Two Subpoenas

On July 11, 2024, plaintiffs served a subpoena *duces tecum* on Nick Uhre requesting three categories of documents:  (1) all written[1] communications between himself and Damien Quintana between August 1, 2023, and March 1, 2024; (2) location data for Nicholas Uhre's cell phone on August 13, 2023; and (3) any documents that show Nicholas Uhre's location on

---

[1] The subpoena requested all communications, but in the meet-and-confer process plaintiffs' counsel clarified that they are not requesting in person communications, only written communications.  See Docket No. 33 at 14.

4

August 13, 2023, including but not limited to out-of-town receipts.  Docket No. 33 at 6.  On the same date, plaintiffs served Damien Quintana with a subpoena *duces tecum* seeking all communications between himself and Nick Uhre from August 1, 2023, to March 1, 2024.  Id.

Mr. Uhre and Mr. Quintana did not produce any documents pursuant to the subpoenas.  After the bankruptcy stay was lifted and a new scheduling order in this case was in place, Nick Uhre filed objections to his subpoena, while Mr. Quintana did not file any objections either before or after the stay.  Plaintiffs argue that Mr. Uhre's objections were untimely and, thus, were waived.  Because he filed no objections at all, plaintiffs argue Mr. Quintana has also waived his right to assert any objections.

## DISCUSSION

### A.   Requirement to Meet and Confer

Before a party may file a discovery motion seeking to compel discovery, the party is required to meet and confer with the party from whom the discovery is requested in a good faith effort to resolve the discovery dispute.  Fed. R. Civ. P. 26(c)(1) and 37(a)(1); DSD LR 37.1.  Here, plaintiffs certify that they have met this requirement.  See Docket No. 30 & 34.  Defendant does not contest this assertion.

### B. Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).

A party requesting the production of documents "must describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34(b)(1)(A). The responding party must allow inspection, produce copies, or object and provide a basis for that objection. Id. at (b)(2)(B)-(C). "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Id. at (b)(2)(E)(i). "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Id. at (b)(2)(B).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The broad scope of discovery ensures

6

"[m]utual knowledge of all the relevant facts . . . essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial.  These considerations are not inherent barriers to discovery, however.

### C.     Motion to Compel Against Retsel Corp.—Docket No. 28

#### 1.     RFP 13 & 15

Both of these RFPs request documents designed to determine Nick Uhre's location on August 13, 2023.  RFP no. 13 seeks cell phone location data from Mr. Uhre's cell phone for the entire day while RFP no. 15 seeks any other type of document (such as receipts) that would tend to show his location at any time on that day.

Although defendant's former counsel previously indicated it would look for and produce documents responsive to RFP no. 15, defendant now opposes both requests.  The purpose of the discovery, defendant asserts, is to try to show that Nick Uhre was the man behind the front desk when the Whites tried to check into the Grand Gateway Hotel on August 13, 2023.  Defendants state they have already provided discovery in the form of Mr. Uhre's and Mr. Quintana's deposition testimony and payroll records indicating it was

7

Mr. Quintana that was the employee on duty that night. Furthermore, defendant points out that both Mr. and Mrs. White, Mr. White's mother, and a 21-year old adult child were in the lobby at various times on the night in question. Defendant argues they should be able to testify whether it was Mr. Uhre or Mr. Quintana behind the desk without resort to these discovery requests.

But plaintiffs are not limited to taking defendant's word for who was behind the desk. And a fleeting interaction with a stranger might not result in a firm memory of what that person looked like, especially after two intervening years when memories fade and people's appearances can change dramatically.

Defendant has posed no meritorious objection to RFP 15. The court orders that defendant produce any documents that would tend to show Mr. Uhre's locations. However, the Whites have repeatedly indicated they went to the hotel at around 10 pm. Mr. Uhre's locations prior to that time of the day are not relevant. The court will impose a limitation on documents responsive to RFP no. 15 and require production only of those documents showing Mr. Uhre's location from 9 pm to 11 pm. Defendant is directed to serve plaintiff with a revised written response to RFP no. 15 and to produce any responsive documents.

As to RFP no. 13, defendant is correct in asserting that turning over one's cell phone to be examined is an invasion of privacy. Furthermore, the court finds plaintiffs' request is not narrowly enough tailored. As indicated above, Mr. Uhre's movements in the morning, afternoon, and early evening are

irrelevant. It is only Mr. Uhre's location at around 10 pm that is relevant. Yet plaintiffs request location data from Mr. Uhre's phone for the entire day.

The court will grant plaintiffs' motion to compel as to RFP no. 13, but the search for location data must be limited to the period from 9 pm to 11 pm on August 13, 2023. Furthermore, the court orders the parties to agree upon a third party to conduct the forensic examination of Mr. Uhre's phone and to agree upon a time, place, and duration of the forensic search, minimizing the period of time to the greatest extent possible that Mr. Uhre is without possession of his phone.

Finally, the court orders that the documents produced pursuant to both RFP no. 13 and 15 be restricted to attorneys eyes only. The results of the search may be viewed by the attorneys of record in this case for the parties and their employees. If the parties contemplate that further dissemination of this discovery may be necessary (such as to an expert), that party must first consult the other party to attempt to obtain permission. Absent permission granted by the opposing party, permission must be obtained from the court for further disclosure of the discovery. Clients of either side (the parties) are not to be given access to this discovery. If a lawyer wishes to file the discovery in support of a motion or as an exhibit at trial, the discovery must be filed under seal. Plaintiffs' counsel must agree to return the discovery or destroy it at the conclusion of this litigation.

**2.     RFP No. 12**

RFP no. 12 seeks "all written communications from August 1, 2023, to March 1, 2024, between Nicholas Uhre and Damien Quintana." See Docket No. 31-3 at 4. Defendant's former counsel initially indicated that documents would be identified and the discovery response supplemented. Id.

Defendant's current counsel objects to this request, stating baldly that the request seeks six months of communications wholly unrelated to the specific claims in the case. See Docket No. 36 at 11. However, defense counsel also represents that "exhaustive, good-faith searches were performed both with former and current counsel. All responsive, non-privileged materials have been produced in satisfaction of Request No. 12." See Docket No. 36 at 12.

The court cannot order defendant to produce documents that don't exist. Plaintiffs have given the court no concrete reason to disbelieve defendant's assertion that it has complied by producing all documents pursuant to RFP no. 12. The court denies plaintiffs' motion to compel as to RFP no. 12, but reminds defendant of its ongoing duty to supplement discovery should additional documents come to light.

**3.     RFP Nos. 18 & 19**

Booking.com terminated its relationship to the Grand Gateway Hotel on February 15, 2024. RFP No. 18 seeks all documents relating to this termination. Defendant states that it has undertaken searches for responsive documents and has found only one document, which was produced. See Docket No. 36 at 12. The details of defendant's search for documents

10

responsive to this request were explored in Nick Uhre's deposition and seem reasonable to this court. Again, the court cannot order defendant to produce documents that don't exist.

RFP no. 19 asks for all documents relative to discrimination complaints made against guests or employees of defendant from January 2023 to the present. Defendant represents it has undertaken a thorough search for such documents and produced the responsive documents. See Docket No. 36 at 13. The court cannot order defendant to produce documents that don't exist. The court reminds defendant of its ongoing duty to supplement discovery if additional documents are discovered later. Plaintiffs' request for an order compelling further responses to RFP nos. 18 & 19 is denied.

    **4.    RFP No. 21**

RFP No. 21 requests copies of defendant's audited and unaudited financial statements for a five-year period. Plaintiffs claim this information is relevant to their claim for punitive damages. Defendant acknowledges the relevancy of the discovery, but argues that the request is overly broad and "could be accomplished through less intrusive means." See Docket No. 36 at 14. Defendant points to Connie Uhre's deposition testimony that the hotel's financial status is bleak and it has lost significant revenue and to filings made in defendant's bankruptcy case. Id. at 15.

But general and vague deposition testimony and bankruptcy filings that may only reflect a brief financial snapshot in time are not a substitute for the documents—admittedly relevant—sought by plaintiffs. The court grants

11

plaintiffs' request for an order compelling documents in response to RFP no. 21. However, these documents are to be marked as confidential and treated as such. To the greatest extent possible, plaintiffs must restrict access to these documents to their counsel and any financial expert who is hired to testify at trial. Plaintiffs themselves (the parties) have no need to see these documents and are prohibited from doing so. If plaintiffs' counsel discloses the documents to an expert to facilitate the rendering of an expert opinion, the expert must also agree to not disclose the documents beyond themselves and their direct employees. If such documents are filed in support of a motion or used as an exhibit at trial, they shall be filed under seal with the court. At the end of this litigation plaintiffs must return the documents to defendant or agree to destroy them and any copies.

### 5.     RFP No. 23

RFP No. 23 requests "all documents regarding Hotel security on August 13, 2023, including security services provided by Your employees or agents and security services provided by third-parties." Docket No. 31-12 at 5-6. Defendant objects to this request as irrelevant. Plaintiffs allege the request is relevant because defendant referenced its security services in its answer.

In fact, defendant stated in its answer that "Ryan White was asked to leave the premises after he threatened the employee working the front desk with physical violence. The employee, in fear for their personal safety due to Ryan White's threats, informed the Plaintiffs that he would call security if Ryan White did not leave." See Docket No. 5 at 4. Everyone apparently agrees that

both plaintiffs left the hotel lobby without ever setting eyes on any security personnel.

The court agrees with defendant. The defendant never said that security personnel actually came to the lobby. The defendant never even said that security was actually called. All defendant said was that its employee said he *would call* security if Mr. White didn't leave. That is not enough to make all documents about defendant's security (or lack thereof) relevant to this lawsuit. The court denies plaintiffs' request for an order compelling a response to RFP no. 23.

### 6.   Redacted Email

In response to RFP 4 & 9, defendant produced a three-page email BATES numbered Retsel_005468 to 005470. See Docket No. 31-13. Two of the three pages are redacted. This is an October 27, 2023 email chain between Nick Uhre and Hospitality Handyman LLC inquiring about the Whites' reservations. Hotel Handyman confirms that the Whites made a reservation on August 7 via Travelocity and that the reservations were picked up by the Ihotelier system, but did not pass from Ihotelier system to the roomMaster system. Id. at 2.

The communication is not attorney-client privileged. It is not attorney work product. Plaintiffs assert that defendant has not provided a privilege log for this document. In responding to plaintiffs' motion to compel, defendant does not even address this redacted email. See Docket No. 36.

A party claiming confidentiality, privilege, or work product must expressly make the claim and provide a privilege log. See Fed. R. Civ. P.

13

26(b)(5). Defendant has failed to do so and has not supported in any way its refusal to produce this email in unredacted form. The court grants plaintiffs' motion to compel defendants to provide an unredacted copy of RETSEL_005469 & RETSEL_005470.

### D. Motion to Compel Against Nick Uhre and Damien Quintana—Docket No. 32.

Rule 45 of the Federal Rules of Civil Procedure allows a party to serve a subpoena for the production of documents on a nonparty, with notice to the other parties in the litigation. See FED. R. CIV. P. 45(a). The nonparty on whom the subpoena is served must be protected from undue burden or expense. Id. at subsection (d)(1).

A subpoena *must* be quashed or modified if it requires the disclosure of privileged or other protected matter if there is no exception or waiver applicable, or if the subpoena subjects a person to undue burden. Id. at subsection (d)(3)(A). A subpoena *may* be quashed or modified to protect a person affected by a subpoena if the subpoena requires disclosure of a trade secret or other confidential research, development, or commercial information. Id. at subsection (d)(3)(B).

"Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, A. Benjamin Spencer, and Adam Steinman, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. April, 2017) (hereinafter "Fed. Prac. & Proc. Civ."). As with other discovery, the

relevancy issue at the time a subpoena is served is broad—the court does not evaluate whether the evidence sought is admissible, but rather whether the information is relevant to a claim or defense and is nonprivileged. Id. The court also considers whether the information is likely to lead to the discovery of admissible evidence. Id. The party seeking to quash a subpoena bears the burden of demonstrating grounds for quashing it. Id.

Here, neither Nick Uhre nor Damien Quintana are parties to this lawsuit—hence the need for subpoenas rather than discovery requests pursuant to Fed. R. Civ. P. 33 or 34. Plaintiffs' motion bears no indicia that these third parties were served with plaintiffs' motion to compel. Defendant purports to object on Uhre and Quintana's behalves, but a corporation cannot represent an individual and it appears Retsel Corp. lacks standing to object to the subpoenas.

In any case, the court finds that the resolution of the discovery requests directed to defendant Retsel has made resolution of the motion to compel on the third-party subpoenas moot. Accordingly, the court denies plaintiffs' request for an order compelling Nick Uhre and Damien Quintana to respond to the subpoenas served on them.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that plaintiff's motion to compel against defendant Retsel Corporation [Docket No. 28] is granted in part and denied in part as detailed in the body of this opinion. Retsel is ordered to produce any documents ordered

to be produced above within 15 days of the date of this order unless objections to this order are lodged by either party within 14 days prior. It is further

ORDERED that plaintiffs' motion to compel against Nick Uhre and Damien Quintana [Docket No. 32] is denied.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections unless an extension of time for good cause is obtained. FED. R. CIV. P. 6(b)(1), 72(a). Failure to file timely objections will result in the waiver of the right to appeal this ruling. United States v. Becerra, 73 F.4th 966, 972-73 (8th Cir. 2023). Objections must be specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356, 357-58 (8th Cir. 1990).

DATED this 17th day of September, 2025.

BY THE COURT:

*/s/ Veronica L. Duffy*

VERONICA L. DUFFY
United States Magistrate Judge